IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-0687-WJM-STV

ANZA TECHNOLOGY, INC.,

    Plaintiff,

v.

XILINX, INC.,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

This is a patent infringement action brought by Plaintiff Anza Technology, Inc. ("Plaintiff") against Defendant Xilinx, Inc. ("Defendant"). Currently before the Court is Defendant's Motion to Transfer Venue Under 28 U.S.C. § 1404(a), seeking to transfer this case to the Northern District of California ("Motion to Transfer"). (ECF No. 31.) For the reasons set forth below, Defendant's Motion to Transfer is granted.

## I. BACKGROUND

Plaintiff filed its Complaint on March 17, 2017 (ECF No. 1), and filed a subsequent First Amended Complaint on May 9, 2017 (ECF No. 27). Plaintiff alleges that it is a "designer, manufacturer and seller of products directed to the manufacture and assembly of electronics including the bonding of electrostatic-discharge-sensitive devices." (*Id.* ¶ 5.) Plaintiff is incorporated in California and has its principal place of business in Rocklin, California. (*Id.*) Defendant is incorporated in Delaware and has its principal place of business in San Jose, California. (*Id.* ¶ 6.) Defendant alleges that it

is "the global leader in all programmable semiconductor technologies," and further, that it is a fabless company, meaning that it does not manufacture its own products, but rather "contracts with third-party semiconductor manufacturing companies in Asia . . . to manufacture [integrated circuits], which in turn are transferred to other third parties in Asia for packaging." (ECF No. 31 at 1–2.)[1]

Plaintiff seeks damages for Defendant's alleged infringement on Plaintiff's patents Nos. 7,389,905 (issued for a "Flip Chip Bonding Tool Tip" ("905 patent")), 6,935,548 (issued for a "Dissipative Ceramic Bonding Tool Tip" ("548 patent")), and 6,354,479 (issued for a "Dissipative Ceramic Bonding Tool Tip" ("479 patent")). (ECF No. 27 ¶¶ 31–33.)[2] According to Plaintiff, Defendant "designs, imports, [and] sells . . . products with electrostatic-discharge-sensitive integrated circuit chips that are assembled . . . in a manner that infringes the" 479, 548, and 905 patents. (*Id*. ¶ 7.)

On June 9, 2017, Defendant filed the instant Motion to Transfer pursuant to 28

---

[1] According to Defendant, it contracts with: (1) Siliconware Precision Industries Ltd. ("SPIL"), which is based in Taiwan and has its North America office in San Jose, California, (2) Amkor Technology, which is based in Phoenix, Arizona, has its main sales office in San Jose, California, and does all manufacturing in the Philippines and South Korea, and (3) Whizz Systems, which is based in Malaysia but has its North America office in Santa Clara, California. (ECF No. 31 at 4.) San Jose and Santa Clara are both located in the Northern District of California. *See Jurisdiction Map*, USCOURTS.GOV, http://www.cand.uscourts.gov/jurisdictionmap (last visited Oct. 26, 2017).

[2] Steven F. Reiber and Mary Louise Reiber are the sole named inventors of the 479 and 548 patents, whereas Steven F. Reiber is the sole named inventor of the 905 patent. (ECF No. 27 ¶¶ 31–33.) By assignment, Plaintiff is now the owner of the three patents. (*Id*.) Further, Steven F. Reiber is Plaintiff's Chief Executive Officer, while Mary Louise Reiber is its Chief Financial Officer. (ECF No. 31 at 2 (referencing ECF Nos. 31-6, 31-7, and 31-8).)
According to Defendant, Steven Reiber lives in Rocklin, California, and Mary Louise Reiber lives in Lincoln, California. (*Id*.) Rocklin and Lincoln are both located in the Eastern District of California. *See Jurisdiction and Venue*, USCOURTS.GOV, http://www.caed.uscourts.gov/caednew/index.cfm/cemecf-e-filing/jurisdiction-and-venue/ (last visited Oct. 26, 2017).

U.S.C. § 1404(a). (ECF No. 31.) Plaintiff filed a Response on June 30, 2017 (ECF No. 41), and Defendant replied on July 14, 2017 (ECF No. 42). Accordingly, the Motion to Transfer is now ripe for resolution.

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The party seeking to transfer a case bears the burden of establishing that the existing forum is inconvenient. *See Chrysler Credit Corp. v. Country Chrysler, Inc*., 928 F.2d 1509, 1515 (10th Cir. 1991).

In ruling on a motion to transfer venue, district courts must assess two issues: (1) whether the case might have been brought in the proposed transferee district, and (2) whether the "competing equities" weigh in favor of adjudicating the case in that district. *See Hustler Magazine, Inc. v. U.S. Dist. Court for the Dist. of Wyo*., 790 F.2d 69, 71 (10th Cir. 1986).

Lastly, the decision to transfer venue lies in the sole discretion of the district court and should be based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 29 (1988) (internal quotation marks omitted).

## III. ANALYSIS

No party disputes that this lawsuit could have been originally filed in the Northern District of California. (ECF No. 31 at 6; *see generally* ECF No. 41); *see also* 28 U.S.C. § 1400(b) ("[A]ny civil action for patent infringement may be brought in the judicial district

3

where . . . the defendant has committed acts of infringement and has a regular and established place of business."). The Court therefore moves directly to the "competing equities." See Hustler, 790 F.2d at 71.

As defined in Tenth Circuit case law, the competing equities that must be weighed in a motion to transfer venue under 28 U.S.C. § 1404(a) include the following factors:

> (1) plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (quoting *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)). The Court will discuss each factor below.

**A.      Plaintiff's Choice of Forum**

The Tenth Circuit has stated that "[u]nless the balance is strongly in favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed." *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972).[3] However, little weight is given "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010). Additionally, a plaintiff's choice of forum receives less deference if the plaintiff does not reside in the district. *See*

---

[3] But, as will be discussed shortly, the Tenth Circuit has more recently also endorsed the convenience of witnesses as the most important factor.

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *see also Bailey v. Union Pac. R.R.*, 364 F. Supp. 2d 1227, 1229–30 (D. Colo. 2005).

Defendant argues that Plaintiff's choice of forum should be given "no weight" because Plaintiff "does not have a single tie to this District." (ECF No. 31 at 6; ECF No. 42 at 3.) Specifically, Defendant asserts that Plaintiff is a California corporation with its principal place of business in Rocklin, California, and "its principals Steven F. Reiber and Mary Louise Reiber, who live in Northern California, previously submitted declarations in this District challenging jurisdiction based on lack of contacts with Colorado." (ECF No. 42 at 3 (referencing *CoorsTek, Inc v. Reiber et al.*, Case No. 8-cv-113-KMT-CBS).)

Plaintiff does not dispute these assertions, other than noting that "the Reibers ultimately withdrew [that] motion contesting personal jurisdiction in this District." (ECF No. 41 at 4.) Nevertheless, Plaintiff argues that its "choice of forum should be given substantial weight" because of Defendant's "long history in this District." (*Id*. at 3.) Specifically, Plaintiff asserts that Defendant sells the "accused products in this District" and its "employees at the Longmont, Colorado location interact with at least one of the [original equipment manufacturers ('OEMs')] for certain accused products with respect to product development." (*Id.* at 3.) Defendant disputes the latter assertion, noting that it "does not have any employees at the Longmont location who interact with [Defendant]'s third-party manufacturers concerning packaging of [integrated circuits] (which is [Plaintiff]'s primary focus in this lawsuit), and only five employees at Longmont interact with third-party manufacturers regarding [Defendant]'s development kits." (ECF No. 42

5

at 4–5.)[4]

In the Court's view, Defendant has the better argument. As noted above, Plaintiff and its principals do not reside in this District and the facts "giving rise to the lawsuit" have very little, if any, "material relation or significant connection" to Colorado. *See Bartile Roofs*, 618 F.3d at 1168. Although there may be five employees at the Longmont facility that interact with one of the OEMs located in Asia, David Ferguson, Vice President of Operations at Defendant, notes in his declaration that his "team in Singapore is primarily responsible for interacting with [the OEM] regarding the production of [Defendant]'s development kits." (ECF No. 31-1.) Moreover, it appears that Defendant sells the "accused products" globally, with sales offices throughout the United States, Europe, and Asia. (*See* ECF Nos. 31-4, 31-5.) Thus, although the infringements alleged in the First Amended Complaint have taken place in Colorado because Defendant's products are sold here, they have also taken place in every other district where Defendant's products are sold, including the Northern District of California. (*See* ECF No. 31-5 at 2.)

The Court therefore finds that Plaintiff's choice of forum carries little weight. *See Potter Voice Techs, LLC v. Apple, Inc.*, 2013 WL 1333483, at *3 (D. Colo. Mar. 29, 2013) (finding that the plaintiff's choice of forum carried "little weight" where "the infringements alleged [were] not tied to Colorado any more than to other states and districts").

---

[4] Defendant further argues that Plaintiff "vaguely accuses [Defendant]'s printed circuit boards ('PCBs' bonded with the accused [integrated circuits] without identifying any specific products. [Plaintiff]'s fundamental problem is that the asserted patents are not directed to populating [integrated circuits] to PCBs." (ECF No. 42 at 5.)

6

### B. Witnesses and Sources of Proof

"The convenience of witnesses is the most important factor in deciding a motion [to transfer venue] under § 1404(a)." *Bartile Roofs*, 618 F.3d at 1169. "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *Id*. (internal quotation marks omitted; alterations incorporated). "In analyzing the accessibility of witnesses, the convenience of non-party witnesses weighs more heavily than the convenience of parties and their employees." *Potter*, 2013 WL 1333483, at *2. Further, the availability of compulsory process can be a key factor in transfer decisions where third party witnesses are located in the transferee district. *Bailey*, 364 F. Supp. 2d at 1230; *see also Sackett v. Denver & Rio Grande Western R.R. Co.*, 603 F. Supp. 260, 261–62 (D. Colo. 1985) (transferring case to Utah where witnesses were subject to subpoena).

Defendant argues that the "vast majority of witnesses and documents possibly relevant to this case are in either the Northern District of California or Asia." (ECF No. 31 at 8.) As to its own employees, Defendant asserts that it expects to call at trial "key technical individuals involved in the packaging of [integrated circuits]," of whom are all located in either San Jose, California, or Singapore. (*Id*. at 10.) As to relevant non-parties, Defendant asserts that it would expect to call: (1) multiple attorneys, all located in California, who prosecuted the patents-in-suit, and (2) the OEMs located in Asia with

7

North America operations in northern California. (*Id.* at 10–12.)

Plaintiff asserts that "foreign third party witnesses and expert witnesses will likely be more relevant to this case than [Defendant]'s own witnesses[,]" but in any case, this "only marginally weighs in favor of transfer given that the bulk of the most relevant evidence is likely to come from third party witnesses not located in either forum–namely [Defendant]'s foreign suppliers and OEMs." (ECF No. 41 at 7–8.)

First, it is undisputed that Plaintiff's fact witnesses—Steven F. Reiber and Mary Louise Reiber—are located in California, with the possible exception of the five Longmont, Colorado employees who may "have discoverable information." (*Id.* at 8.) Second, all of Defendant's witnesses, including third-party witnesses, with knowledge regarding the design and manufacturing of the accused products, or the prosecution of the patents themselves, reside in either California or Asia. (*See generally* ECF No. 31 at 9–12.) It is noteworthy that this Court may not be able to secure these third-party witnesses' attendance at trial. The Northern District of California, however, has the availability of compulsory process to secure the attendance of at least the California witnesses at trial. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) (availability of compulsory process weighs in favor of transfer). Thus, as the majority of witnesses and documents in this case, including third parties, are located in the Northern District of California, while Plaintiff only asserts that there may be five "potential witnesses" in Colorado, the Court finds that this factor weighs in favor of transfer.

**C.     The Cost of Making the Necessary Proof**

Defendant argues that because both parties have their principal place of business

in California, it will generally be "more expensive for witnesses and counsel to travel to Colorado." (ECF No. 31 at 12.) Defendant also states that it would be easier for third-party witnesses located in Asia to travel to California, as opposed to Colorado. (*Id.* at 12–13 (citing *Aloft Media, LLC v. Yahoo!, Inc.*, 2009 WL 1650480, at *5 (E.D. Tex. June 10, 2009) (recognizing California would be more convenient for witnesses located in Asia)).) Plaintiff responds that Defendant "has failed to offer any evidence that it is more burdensome or expensive to travel from Asia to San Francisco than it is from Asia to Denver as both are large international hubs." (ECF No. 41 at 8.)

The costs Defendant cites, whether or not it is significantly cheaper to fly from Asia to California versus Asia to Denver, would only occur in the event that the case proceeds to trial and the witnesses from Asia agree to testify. "Nevertheless, for the purposes of weighing the competing equities, the Court cannot assume . . . that the witnesses' travel will otherwise be unnecessary." *Aurora Commercial Corp. v. Lenox Fin. Mortg. Corp.*, 2013 WL 5200231, at *4 (D. Colo. Sept. 16, 2013). Thus, upon review of the record, it is clear to the Court that litigating in California would reduce the overall cost of litigation. Therefore, the Court finds that this factor weighs in favor of transfer. *See Potter*, 2013 WL 1333483, at *3 (finding cost factor weighs in favor of transfer where "it would be more expensive for several Apple witnesses to travel to Colorado for trial than it would be for Potter's one witness . . . to travel to California for trial").

D.     **Judgment Enforceability**

A judgment obtained in federal court may be enforced in any other federal court through a very simple "registration" process in the federal court where enforcement

would take place. *See* 28 U.S.C. § 1963. Thus, there are no barriers to enforcement beyond minimal paperwork and nominal fees, making this factor neutral.

E.     **Relative Advantages and Obstacles to a Fair Trial**

The parties agree that the District of Colorado and the Northern District of California are equally capable of providing a fair trial, making this factor neutral. (ECF No. 31 at 13; ECF No. 41 at 10.)

F.     **Docket Congestion**

"When evaluating the administrative difficulties of court congestion," one of the most relevant statistics is the median time from filing to trial. *Bartile Roofs*, 618 F.3d at 1169.

While both parties seemingly agree that this factor is neutral, Defendant does assert "that the median time to trial in a patent case in the Northern District of California is on average five months shorter than in [the District of Colorado]." (ECF No. 31 at 13 (referencing *Legal*Metric data found in ECF Nos. 31-22, 31-29); *see also* ECF No. 41 at 10.)

Defendant's interpretation of these descriptive statistics is technically incorrect. Defendant mistakes the average for the median, and further references a composite average, not the average for year 2016 alone. The Court's reading of the data shows the following comparative statistics for the year 2016:

|  | **D. Colo.** | **N.D. Cal.** |
|---|---|---|
| Median time from filing to trial (patent cases) | 33.9 months | 30.2 months |

Thus, the Northern District of California tends to bring patent cases to trial more

10

quickly than the District of Colorado. Specifically, the median time from case filing to start of trial is 3.7 months faster in the Northern District of California. Accordingly, the Court finds that this statistic ultimately favors transfer to the Northern District of California.

G.     **Conflict of Laws & Local Courts Determining Questions of Local Law**

The parties also agree that this factor is neutral. (ECF No. 31 at 13; ECF No. 41 at 10.)

H.     **All Other Practical Considerations**

The only "practical consideration" offered by any party is Plaintiff's assertion that "two of the three patents have already been litigated in this District and were the subject of a claim construction order by [United States Magistrate Judge Kathleen M. Tafoya]." (ECF No. 41 at 1.) Thus, Plaintiff argues that "this District is readily familiar with two of the three patents-in-suit," and that "judicial efficiency would be served by allowing this case to proceed in the same District[.]" (*Id.* at 4–5.) Defendant responds that "[t]here is no economy to be achieved from the 2011 claim construction order . . . [because it] is six years old, involved different parties as both plaintiff and defendant, and was issued by a different judge." (ECF No. 31 at 14.)

In the Court's view, regardless of whether this action remains in this District or is transferred to another district, any court would be capable of reviewing and interpreting Judge Tafoya's claim construction order to the extent applicable. Accordingly, this factor is neutral.

### I. Summary of Competing Equity Factors

All of the foregoing competing equities, considered together, point toward transfer. Specifically the factor involving convenience of the witnesses (the "most important factor," *Bartile Roofs, Inc.*, 618 F.3d at 1169) favors the Northern District of California, and that district tends to bring patent infringement cases to trial more quickly than the District of Colorado. Further, aside from Plaintiff's interest in its choice of forum, none of the factors that the applicable case law directs this Court to consider weigh in Plaintiff's favor on the transfer question. As such, in its discretion, the Court finds that transfer is warranted.

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion to Transfer (ECF No. 31) is GRANTED;

2. This case is TRANSFERRED to the United States District Court for the Northern District of California. The Clerk shall transmit the file to the Clerk of that court.

Dated this 27th day of October, 2017.

BY THE COURT:

William J. Martínez
United States District Judge